[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action, commenced on September 30, 1996 to collect real estate commissions allegedly due plaintiff real estate firm from two joint owners of premises known as One Commercial Plaza, Hartford, in connection with certain leases procured by plaintiff under an agreement with defendants ("Rental Agency Agreement") dated December 10, 1980. After appearances were filed by defendants and pleadings closed, the defendant styled "Olympia and York" was defaulted for failure to appear at a scheduled pre-trial conference. Just prior to trial on oral motion of Attorney Shipman, the default was vacated without objection. The parties proceeded to trial on February 2, 1999, at which time John P. Cavanaugh, president of the plaintiff, was the sole witness. Post-trial briefs were filed up to February 11, 1999.
 -I-
Plaintiff entered into the Rental Agency Agreement for One Commercial Plaza by way of a document dated December 10, 1980, which was signed by David T. Chase on behalf of defendant Chase Family Limited Partnership as well as defendant Olympia and York Hartford, Inc. The agreement provided that it remain in effect, unless canceled, until December 31, 1984 and Schedule A sets up a commission rate of 3 1/2% of the base rent on lease transaction procured by plaintiff for the first ten years of a lease. An amendment to the Rental Agency Agreement dated January 1, 1985, extended the effective date of the Rental Agency Agreement until December 1, 1986 and set forth a revised Schedule A providing a commission rate on lease transactions of 5% of the base rent for the first ten years of a lease. The amendment was executed on behalf of "Chase Family Limited Partnership No. 3" by David Chase, general partner and on behalf of Olympia and York Hartford, Inc. by William Hay, its executive vice president, the signature of Chase being acknowledged on July 16, 1985, and that of hay on December 31, 1985 and that of John H. Fritz, who signed on behalf of plaintiff, on January 6, 1986.
The plaintiff obtained two tenants, Advest, Inc. and Advest Bank which entered into leases of multiple floors at One Commercial Plaza beginning November 1, 1985 and ending October 31, 1990. Each original lease provided for two consecutive CT Page 7299 extension periods of five years each.
On December 21, 1989, these tenants and the owners entered into written agreements, each entitled "Second Lease Amendment and Confirmatory Agreement" under which the owners offered the tenants certain inducements by way of credits totaling $3,500,000 half to be non-refundable and half to be refundable if tenants failed to exercise their option for the second five year extension. When the tenants exercised their option for the first extension period they were paid the full $3,500,000 in credits. Subsequently, when tenants decided not to exercise their option for the second five year extension they returned $1,750,000, half the total credit given to them, to the owners.
Plaintiff originally billed defendants for commissions at the rate of 3 1/2% based on the total rent payable by the tenants during the first five year extension after subtracting $1,750,000 non-refundable credit paid by the owners and this bill was paid. After the owners were given back the refundable sum of $1,750,000 by the tenants, plaintiff billed owners an additional $61,250, being 3 1/2% of the $1,750,000 credit returned and it is this bill which is the subject matter of this action.
 -II-
In its answer, basically leaving Plaintiff to its proof, Olympia and York Hartford. Inc. filed a special defense of accord and satisfaction.
In its answer dated November 18, 1996 Chase Family Limited Partnership basically denied the allegations of the complaint and raised the special defenses; (1) the purported contract failed to comply with General Statutes § 20-325a; (2) the complaint is time barred; (3) estoppel.
In addition both parties argued orally and by brief that the corporate entities served were not the parties who owned the premises or had responsibility under the Rental Agency Agreement. They further argued that any obligation to pay the plaintiff a further commission when half of the inducement credit was returned to the owners is either barred by the six year statute of limitations or by the strict requirements of General Statutes § 20-325 (a).
These defenses were vigorously argued at trial and by brief CT Page 7300 and are discussed below even though it is concluded that plaintiff has failed to sustain its burden of proof.
 -III-
Defendants argue that the amendment to the Rental Agency Agreement (Ex 2) dated January 1, 1985 does not meet the requirements of CGS § 20-325a, mandating that any contract for real estate services be in writing and "show the date on which such contract was entered into or such authorization given. It is claimed that since the plaintiffs did not sign the document until January 6, 1986, there was no enforceable contract when the Advest leases were entered into.
This agreement has no particular relevance to the claim in this case because on December 21, 1989, prior to the expiration of the original lease period, Advest and the defendants entered into written contracts each entitled "Second Lease Amendment Agreement and confirmatory Agreement (Exhibits 3 and 4) and this was done while the original rental agency agreement dated December 10, 1986 was still in effect. That agreement contained the names and addresses of the plaintiff broker and defendant owners, all the conditions relevant to this cause of action, the date and signature of the parties; it is adequate to meet the requirements of General Statutes § 20-235a as it stood in December 1989 or as it stands today.
 -IV-
Defendants argue that plaintiffs claim for commission is time barred by the six year statute of limitations in General Statutes § 52-576.
The commissions in dispute under this action did not accrue until November 1, 1990 when the first lease extension became operative, even though the plaintiff submitted an invoice as early as January 25, 1990. That invoice noted that the commissions were not due until November 1990. This action was commenced on September 30, 1990 well within six years from the date defendants' liability for additional commissions accrued.
 -V-
Both defendants claim that the corporate entities being sued have not been shown to be the owners of the property or the ones CT Page 7301 who entered into the rental agreement.
It is significant that the rental agreement dated December 10, 1980 was signed by David T. Chase on behalf of both "Chase Family Limited Partnership" and "Olympia and York Hartford, Inc." collectively referred to as owner. It is true that the return of service by the sheriff shows that service was made on "Olympia and York. On April 23, 1997 Attorney Shipman filed a Response to Request for Admissions and a separate answer on behalf of "Olympia and York Hartford, Inc." in which Paragraphs 2 and 3 of the complaint alleging the Rental Agency Agreement and Amendment were alleged.
The Amendment to the Rental Agreement dated January 1, 1985 recites the owners as "Chase Family Limited Partnership No. 3" and "Olympia and York Hartford, Inc."
While there has been some casualness in the setting out of the corporate names, there is not much doubt that the corporate parties executing the original rental agreement and proper parties in this action are Chase Family Limited Partnership and Olympia and York Hartford, Inc.
 -VI-
However, even if all the defenses raised by defendants seem to be unavailing, the plaintiff was, of course, required to prove that by agreement or under equitable considerations, it was entitled to the additional commission it was seeking. In its trial memorandum dated February 2, 1999, plaintiff seems to claim that it calculated its commission on the first five year lease extension "by subtracting the credits from the original lease price and applying the Schedule A commission rate of three and one-half percent of the remainder" "Credits" would seem to refer to the $3,500,000 which the lessees received from the owners at the time of this first extension. The plaintiff emphasized in its brief and oral argument that in this action it is seeking an additional commission based only on the $1,750,000 which was subsequently paid back to the owners. Such a claim would logically follow only if the plaintiff had calculated its commission on the first five year extension by subtracting from its bill calculation rentals equal to the $3,500,000 total credits. Then it would be entitled to a commission on the rentals, now in effect restored to the owners by the refund of $1,750,000 from the lessees. CT Page 7302
But the evidence at trial indicated that plaintiff has subtracted only $1,750,000 from the rentals before computing its commission on its bills of January 25, 1990 which was admittedly paid in full. See Exhibits 9 and 11. In its post trial brief dated February 11, 1999, page 3, plaintiff concedes that it calculated its commissions "by subtracting only the non refundable credit from the original lease price and applying the Schedule A commission rate of three and one-half percent to the remainder."
Put another way, the subsequent refund of $1,750,000 to the owners would seem to have no bearing on plaintiffs claimed commission because in its computation of its original commission statement it was never taken into consideration in reducing the total rental payable to the owners and the commissions computed thereon.
Accordingly, plaintiff has failed to prove under any theory of recovery, that any sums are due it based on actual rentals under the first five year extension, reduced by credits paid or returned by defendant owners.
Judgment for the defendants.
Jerry Wagner Judge Trial Referee